UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| ALEJANDRO YEATTS, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | CAUSE NO. 3:16-CV-706-MGG |
|  | ) |  |
| ZIMMER BIOMET HOLDINGS, INC., | ) |  |
|  | ) |  |
| Defendant. | ) |  |
|  | ) |  |

**OPINION AND ORDER**

On November 7, 2016, Defendants, Zimmer Biomet Holdings, Inc. ("Zimmer Biomet"), filed its Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6). [DE 4]. On November 25, 2016, Plaintiff, Alejandro Yeatts ("Yeatts"), filed his response in opposition to Zimmer Biomet's motion. [DE 12]. Zimmer Biomet's motion became ripe on December 4, 2016, when it filed a reply brief. [DE 13]. The undersigned may enter a ruling on this motion based on the parties' consent and 28 U.S.C. § 636(c).

**I.   RELEVANT BACKGROUND**

On October 13, 2016, Yeatts filed his complaint raising three claims — defamation (Count I), intentional infliction of emotional distress (Count II), and negligent infliction of emotional distress (Count III). Yeatts's claims are based on allegations that he was injured as a result of a defamatory email sent by Zimmer Biomet. Yeatts alleges that Zimmer Biomet's email caused him to suffer emotional stress.

According to his complaint, Alejandro Yeatts is a resident of Argentina, who from 2005 to September 4, 2015 was employed by Biomet Argentina, SA, a subsidiary of the Defendant,

Zimmer Biomet. In July 2007, Yeatts attended a presentation by Biomet's Compliance Officer regarding the Foreign Corrupt Practices Act ("FCPA"). Yeatts alleges that after witnessing this presentation, he reported to the Compliance Officer that Biomet Argentina employees had paid commissions to induce government-employed doctors to use Biomet products. After hearing nothing further from the Compliance Officer, Yeatts approached an in-house attorney for Biomet International at a meeting of the American Academy of Orthopedic surgeons and reported the alleged payments to her.

Until 2008, Zimmer Biomet was a party to a distribution agreement between Biomet International and Prosintese, a Brazilian company owned by Sergio Galindo. Prosintese made payments to doctors employed by the government who used Biomet products. In May 2008, Zimmer Biomet General Counsel Bradley Tandy wrote Galindo a termination letter, which stated that Biomet has learned of Prosintese's business practices and that Zimmer Biomet was terminating its relationship to Prosintese. [DE 1 at 3, ¶ 11].

On March 26, 2012, Zimmer Biomet and the United States Department of Justice ("DOJ") entered into a deferred prosecution agreement ("DPA"), pursuant to which the DOJ agreed to defer prosecution of a criminal information charging the company with five felonies, which include violations of the FCPA based on payments made by the company to government doctors. Zimmer Biomet agreed to pay a penalty of $17,280,000. In the DPA, Zimmer Biomet admitted to having knowledge of Prosintese's payments to doctors in Brazil since at least 2001.

In his complaint, Yeatts alleges that Zimmer Biomet breached the 2012 DPA by continuing to maintain a relationship with Galindo and Prosintese. [*Id.* at 7, ¶ 22]. Yeatts further alleges that when Zimmer Biomet became aware that he knew about the breach of the DPA, a company attorney met with him and accused him of continuing to deal with Galindo and

2

Prosintese and concealing this to his superiors. In April 2014, Biomet Argentina suspended Yeatts's employment and ultimately terminated him on September 4, 2015.

Zimmer Biomet asserts in its memorandum in support of its instant motion to dismiss that on the same day Yeatts was terminated, he entered a settlement agreement with Zimmer Biomet. [DE 5 at 6]. Zimmer Biomet states that both parties were represented by counsel during negotiations, which concluded with Zimmer Biomet paying Yeatts approximately $350,000 in exchange for his release of "'any and all claims' against Biomet Argentina, SA, and any 'associated or continuing companies'—without limitation." [*Id.*] Zimmer Biomet attached a copy of the settlement agreement to its memorandum filed on November 7, 2016. [DE 5-2; *see also id.* at 23–24, ¶ **THIRD**].

Yeatts's complaint also alleges that on October 24, 2014, while he was suspended but before he was terminated, Antje Petersen-Schmalnauer, Chief Compliance Officer, Vice President and General Counsel of Zimmer Biomet, sent an email, addressed to "CPWAR DueDiligence (Mailbox)" that informed its readers that Yeatts engaged in criminal activity. [DE 1 at 7, ¶ 24]. Yeatts quoted the email as follows:

> Biomet Inc. and its worldwide subsidiaries ("Biomet" or the "Company") are committed to complying with the anti-corruption and anti-bribery laws in all countries in which Biomet operates. In furtherance of that commitment, Biomet has identified several entities that pose significant and unacceptable compliance risks. The Company has placed these entities on a Restricted Parties List. All Biomet employees, agents, third parties, and any individual or entity performing services for or on behalf of Biomet, anywhere in the world may not do business with any entity on the Restricted Parties List.

[*Id.*]. Yeatts further alleges in his complaint that the "Restricted Parties List" that was attached to the email included Yeatts's name and stated that he had been suspended in connection with a corruption-related investigation involving Brazil. [*Id.*].

3

Yeatts's defamation claim (Count I) alleges that the message in the October 24, 2014, email—that Yeats had engaged in this criminal activity—was false and constituted defamation per se. Further, Yeatts alleges that Zimmer Biomet published the email with malice, knowing that the statements regarding Yeatts were false, or with reckless disregard of their falsity. Also, Yeatts alleges that the publication of the defamatory material damaged his reputation for honesty, integrity, morality and law-abidingness; exposed him to harassment, public contempt and ridicule; caused him to lose professional stature; impaired his employment and earnings opportunities for the rest of his life; and caused him to suffer great pain and mental anguish. [*Id. at 8*, ¶¶ 25-39].

In his intentional infliction of emotional distress claim (Count II), Yeatts alleges that Zimmer Biomet engaged in extreme and outrageous conduct by knowingly publishing false information in the October 24, 2014, email. Furthermore, Yeatts alleges that he suffered severe emotional distress as a result of Zimmer Biomet's extreme and outrageous conduct. Lastly, Yeatts's negligent infliction of emotional distress claim (Count III) alleges that he suffered severe emotional distress as result of Zimmer Biomet's negligence in publishing the email containing false information.

In the instant motion to dismiss, Zimmer Biomet argues that Yeatts has failed to state any claim for which relief can be granted. Specifically, Zimmer Biomet contends that (1) on September 4, 2015, Yeatts entered into a binding settlement and release agreement ("settlement agreement" pursuant to which he released "any and all claims" he had against Zimmer Biomet [*DE 4 at 1*, ¶¶ 1-2]; (2) Count I is inadequately pleaded because Yeatts did not sufficiently plead either a false statement or actual malice [*Id.*, ¶ 4]; (3) Count II fails to state a claim because Yeatts did not allege either outrageous conduct or that Zimmer Biomet acted intentionally to

4

harm him. [*Id.* at 2, ¶ 5]; and (4) Count III fails to state a claim because Yeatts did not plead physical impact sufficiently. [*Id.*, ¶ 6].

## II. ANALYSIS

In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must accept all well-pled factual allegations in the complaint as true, making all permissible inferences in the non-movant's favor. *Gonzalez v. City of Chicago*, 239 F.3d 939, 940 (7th Cir. 2001). Zimmer Biomet's instant motion to dismiss tests the sufficiency of Yeatts's complaint, not the merits of the suit. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).

### A. Settlement Agreement

Zimmer Biomet's first argument is that Yeatts released the claims asserted in his complaint when he entered into the settlement agreement with Biomet Argentina at the time of his termination in September 2015. However, Zimmer Biomet acknowledges that this Court may choose not to consider its release argument in the procedural context of this Rule 12(b)(6) motion to dismiss for failure to state a claim. Accordingly, Zimmer Biomet alternatively asks the Court to invoke Fed. R. Civ. P. 12(d) to convert the instant motion to dismiss into a motion for summary judgment to allow consideration of the settlement agreement, which was not attached to Yeatts's complaint. Should the Court choose not to convert the instant motion to a motion for summary judgment and should any of Yeatts's claims remain after resolution of the instant motion to dismiss, Zimmer Biomet also notes its plan to attach the settlement agreement to its responsive pleading, which will include an affirmative defense based on the release and will be followed by a motion for judgment on the pleadings. Yeatts, on the other hand, argues that it would be improper to dismiss a claim under Rule 12(b)(6) on the basis of a release, but recognizes that the release issue could arise under a different procedural posture just as Zimmer

Biomet suggests. Regardless of which procedural mechanism is ultimately used to determine the effect of the settlement agreement on this action, Yeatts argues that he did not release the claims raised in the case.

Courts have demonstrated conflicting views as to the proper procedural mechanism for addressing a release of liability, comparable to the one allegedly part of the Yeatts-Biomet Argentina settlement agreement, when attached to a defendant's Rule 12(b)(6) motion to dismiss for failure to state a claim. Generally, a court cannot consider the arguments and documents attached to a Rule 12(b)(6) motion without invoking Fed. R. Civ. P. 12(d) and treating the motion as a motion for summary judgment. *Papa John's Int'l, Inc. v. Rezko*, No. 04 C 3131, 2006 WL 566468, at *5 (N.D. Ill. Mar. 3, 2006) (citing *Wright v. Associated Ins. Cos., Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994); *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). However, "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the complaint and are central to plaintiff's claim." *Robert W. Karr & Assocs., Ltd. v. Noveselsky*, No. 08C1197, 2008 WL 4865573, at *2 (N.D. Ill. July 14, 2008) (citing *Venture Assocs.*, 987 F.2d at 431); *see also Yassan v. J.P. Morgan Chase & Co.*, 708 F.3d 963, 975 (7th Cir. 2013). Yet, a release constitutes an affirmative defense under Fed. R. Civ. P. 8(c)(1). *Yassan*, 708 F.3d at 975. "Dismissing a case on the basis of an affirmative defense is properly done under Rule 12(c) [judgment on the pleadings], not Rule 12(b)(6)." *Id.* Courts have applied these basic principles yet come up with what appear to be conflicting results.

For instance, in *Karr & Associates*, the court found that the release presented to the court through the defendant's Rule 12(b)(6) motion to dismiss was referenced in, although not attached to, the complaint. *Id.* As a result, the court converted the Rule 12(b)(6) motion into a motion for

judgment on the pleadings under Rule 12(c) and dismissed the case based on the enforceability of the release. *Id.* at *3.

In *Yassan*, the court upheld a dismissal based on a release presented with the Rule 12(b)(6) motion to dismiss but not attached to the complaint. *Yassan*, 708 F.3d at 976. The court reasoned that the release had been "referenced repeatedly in the complaint" and was central to the plaintiff's claim. *Id.* at 975. However, the court also opined that the release constituted an affirmative defense and that dismissal "on the basis of an affirmative defense is properly done under Rule 12(c), not Rule 12(b)(6)." *Id.* Therefore, the court essentially affirmed the outcome based on the substance of the release, but not the procedural mechanism invoked by the district court in reaching that decision originally. *Id.* at 976.

In *Papa John's*, the court refused to impose sanctions on the defendants based on the plaintiffs argument that the defendants improperly sought consideration of a settlement agreement that was not attached to the plaintiffs' complaint in its Rule 12(b)(6) motion to dismiss. 2006 WL 566468, at *6. In reaching that conclusion, the court noted that the plaintiffs did not mention the settlement agreement, which was essentially a release from liability, in their complaint. *Id.* at *5. In addition, the court acknowledged that the release was an affirmative defense, which "is not an appropriate basis for a motion to dismiss under Rule 12(b)(6)." *Id.* (collecting cases). The court also cited cases from district courts outside the Seventh Circuit that considered a release on a motion to dismiss even if it was not attached to the complaint. *Id.* (collecting cases). In the end, the court in *Papa John's* did not reach any conclusion as to whether the release was properly considered on the motion to dismiss. Instead, the court recognized the conflicting perspectives on the subject and held that the defendants' use of the release in that case was not objectionable enough to warrant sanctions. *Id.* at *6.

Despite what appear to be conflicting results on whether a release should be considered in a Rule 12(b)(6) analysis, the law remains clear that a complaint need not anticipate or overcome any affirmative defenses to survive a Rule 12(b)(6) motion to dismiss. *Jovic v. L-3 Servs., Inc.*, 69 F. Supp. 3d 750, 765 (N.D. Ill. 2014) (citing *Xechem*, 372 F.3d at 901 (7th Cir.2004); *Gomez v. Toledo,* 446 U.S. 635, 640 (1980)). "Only when the plaintiff pleads itself out of court—that is, admits all the ingredients of an impenetrable defense—may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6)." *Xechem*, 372 F.3d at 901.

Here, it is arguable in the first place whether or not Yeatts even mentioned the settlement agreement and the allegedly applicable release in his complaint. Zimmer Biomet relies on Yeatts's reference to his 2015 termination from Biomet Argentina as an implied reference to the settlement agreement. Yet, the complaint does not directly mention the settlement agreement. Even if the tangential reference could be a reasonable rationale for considering the release, its status as an affirmative defense suggests that it is not an appropriate basis for dismissal under Rule 12(b)(6). *See Papa John's*, 2006 WL 566468, at *5. Moreover, the effect of the settlement agreement on these claims is not clear as evidenced by the parties' stark disagreement about the scope of the release. As a result, Yeatts has not pleaded himself out of court based on the release. *See Xechem*, 372 F.3d at 901. Therefore in this case, the effect of the release is more properly considered after this Court resolves the question of whether Yeatts's substantive claims survive the instant Rule 12(b)(6) motion and after Zimmer Biomet formally pleads its relevant affirmative defense. The Court will not convert the instant motion to a motion for summary judgment or a motion for judgment on the pleadings, but will address the adequacy of Yeatts's complaint based on Zimmer Biomet's substantive arguments set forth in the instant Rule 12(b)(6) motion.

### B. Rule 12(b)(6) Failure to State a Claim

Zimmer Biomet next challenges the sufficiency of Yeatts's claims. A complaint that states a plausible claim for relief survives a motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (holding that the pleading stage does not impose a probability requirement but does require alleged facts to be plausible so as to entitle a person to relief even if recovery is remote and unlikely). Put another way, a complaint survives a motion to dismiss if it "contains sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570). "[T]he plausibility standard [asks] for more than a sheer possibility that a defendant has acted unlawfully." *United Food & Commercial Workers Unions & Emp'rs Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 853 (7th Cir. 2013) (internal quotations and citations omitted).

Consequently, "a court need not accept as true 'legal conclusions of the elements of a cause of action, supported by mere conclusory statements.'" *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). Indeed, such conclusory statements are not entitled to the presumption of truth. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). With conclusory statements properly discounted, the court can then "determine whether the remaining factual allegations plausibly suggest an entitlement to relief. *Id.* (internal quotations and citations omitted). A complaint fails if "it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

#### 1. Defamation

To state a claim for defamation under Indiana state law, a plaintiff must allege a communication with defamatory imputation, malice, publication, and damages. *Lovings v.*

*Thomas*, 805 N.E.2d 446, 456 (Ind. Ct. App. 2004). Further, the communication at issue must be both defamatory and a false statement of fact. *Journal-Gazette Co. v. Bandido's, Inc.*, 712 N.E.2d 446, 457 (Ind. 1999) (citing *Hustler Magazine v. Falwell*, 485 U.S. 46, 99 (1988)). In determining whether a communication is defamatory, courts must construe the allegedly defamatory words "in light of the circumstances of their utterance." *Shepard v. Shurz Commc'n, Inc*. 847 N.E.2d 219, 225 (Ind. Ct. App. 2006). Through the instant motion, Zimmer Biomet argues that Yeatts's complaint fails to adequately allege that any statements in the October 24, 2014, email from Petersen-Schmalnauer to "CPWAR DueDiligence (Mailbox)" were false or that Zimmer Biomet acted with "actual malice" in publishing the email. [DE 5 at 9].

### a. False Statement

In support of its claim that Yeatts has not alleged any false statement in the Schmalnauer email, Zimmer Biomet relies upon the alleged opinion nature and truth of the exact words in the email as evidence that there is no false statement in the email and therefore no allegation of a false statement in Yeatts's complaint.

In his complaint, Yeatts alleges that the Schmalnauer email "informed its readers— falsely—that [he] had engaged in criminal activity." [DE 1 at 7, ¶ 24]. Yeatts then quotes the email, part of which allegedly stated,

> Biomet has identified several entities that pose significant and unacceptable risks. The Company has placed these entities on the Restricted Parties List.

[*Id.*]. Yeatts further alleges that his name was included in the "Biomet, Inc. Restricted Parties List" attached to the email with a statement that Yeatts had been "suspended in connection with a corruption-related investigation involving Brazil." [*Id.*].

Zimmer Biomet contends that the statement that "Biomet [had] identified several entities that pose significant and unacceptable risks" was neither defamatory nor false because it was

10

merely the speaker's opinion, which is not actionable for defamation. Indeed, subjective statements of opinion that merely express a speaker's subjective view, interpretation, or theory is not untrue. *Meyer v. Beta Tau House Corp.*, 31 N.E.3d 501, 515 (Ind. Ct. App. 2015). However, opinions are only shielded from liability for defamation if "a reasonable listener would take [the speaker] to be basing his 'opinion' on knowledge of facts of the sort that can be evaluated in a defamation suit." *Sullivan v. Conway*, 157 F.3d 1092, 1097 (7th Cir. 1998). Moreover, a speaker implies knowledge of facts that would support the conclusion when expressing an opinion. *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18–23 (1990). Therefore, the Court must consider the circumstances of the "utterance" of the opinion to determine whether a statement of opinion is actionable.

Yeatts argues that by attaching his name to the Restricted Parties List described in the email and referencing the "corruption-related investigation in Brazil," Zimmer Biomet implicitly implicated Yeatts in its FCPA violations when it identified him as posing a "significant and unacceptable compliance risk[]." Accordingly, a reasonable recipient of the Schmalnauer email would connect Yeatts to Zimmer Biomet's criminal activities, especially if Yeatts is correct that the recipients all had knowledge of the investigation, deferred prosecution agreement, and criminal penalty paid by Zimmer Biomet. Yeatts also alleges that he was not involved in the corruption at Zimmer Biomet and that his contacts and relationship with Galindo were approved by his superiors at Zimmer Biomet. Therefore, Zimmer Biomet's focus on the exact words of Yeatts's allegations regarding the Schmalnauer email fails to capture the effect of the circumstances surrounding the email even assuming that the email explicitly presented facts that are undisputedly true. Consequently, Yeatts's complaint has plausibly pleaded that the statements in the email were false.

### b. Actual Malice

Zimmer Biomet also argues that Yeatts failed to allege actual malice by Zimmer Biomet. "Actual malice, as an element of the tort of defamation, exists when the defendant publishes a defamatory statement 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Shrine v. Loomis*, 836 N.E.2d 952, 958 (Ind. Ct. App. 2005) (citing *New York Times Co. v. Sullivan,* 376 U.S. 254, 279-80 (1964)). Zimmer Biomet argues that Yeatts's complaint makes a conclusory allegation against Zimmer Biomet, failing to allege any actual malice. However, Yeatts's complaint explicitly alleges that he was unaware that Zimmer Biomet did not want him to engage with Galindo or Prosintese; that Zimmer Biomet knew about and approved of his engagement with Galindo; and that when Zimmer Biomet's counsel interviewed him regarding the alleged violations of the DPA, he explained that he was acting with approval of Zimmer Biomet. Taking Yeatts's allegations as true, it is reasonable to infer that Zimmer Biomet was aware that Yeatts was acting with its approval when it published the October 24, 2014, email implicating Yeatts as a compliance risk. Accordingly, Yeatts has plausibly pleaded that Zimmer Biomet knew the email was false, or acted with reckless disregard of its falsity when it published it. Therefore, Yeatts has pleaded actual malice and his defamation claim survives Zimmer Biomet's Rule 12(b)(6) challenge.

### 2. Intentional Infliction Emotional Distress (Count II)

Zimmer Biomet further argues that Count II, Yeatts's intentional infliction of emotional distress claim, is deficient. To state a claim for intentional infliction of emotional distress a plaintiff must allege that the defendant: (1) engaged in extreme outrageous conduct (2) which intentionally or recklessly (3) caused (4) severe emotional distress to another. *Curry v. Whitaker*, 943 N.E.2d 354, 361 (Ind. Ct. App. 2011). Whether "extreme and outrageous" conduct has

occurred depends, in part, upon prevailing cultural norms and values. *Bradley v. Hall*, 720 N.E.2d 747, 752-53 (Ind. Ct. App. 1999). Behavior that is "unreasonable" or "improper" does not by itself rise to the extreme level of outrageousness. *Dietz v. Finlay Fine Jewelry Corp.*, 754 N.E.2d 958, 970 (Ind. Ct. App. 2001). When a communication goes beyond all "possible bounds of decency" such that it would have been the type of "atrocious and utterly intolerable" conduct, intentional infliction of emotional distress claim is appropriate. *Skinner v. Metro. Life Ins., Co.*, 829 F. Supp. 2d 669, 684–86 (N.D. Ind. 2010). Furthermore, if a complaint fails to contain sufficient factual allegations that the defendant intended to emotionally harm the plaintiff, the complaint may be dismissed for failure to state a claim. *See* Tucker v. Roman Catholic Diocese of Lafayette-In-Indiana, 837 N.E.2d 596, 603 (Ind. Ct. App. 2005).

Here, Zimmer Biomet contends that Yeatts did not allege extreme and outrageous conduct and that he pled no facts regarding an intent to harm him from Zimmer Biomet. Yeatts's complaint alleges that "Defendant's conduct in knowingly publishing false information regarding Plaintiff in the October 24, 2014, email was extreme and outrageous." [DE 1 at 9, ¶ 31]. Yeatts's allegation of extreme and outrageous conduct, however, is merely a conclusory allegation without any explanation how the conduct was extreme and outrageous. Likewise, Yeatts's complaint does not plausibly allege that Zimmer Biomet intended to emotionally harm him. The complaint just states that "[Zimmer Biomet] published false information regarding [Yeatts] in the October 24, 2014, email intentionally or recklessly." A publication of an email absent further factual allegations does not even create an inference of an intent to harm. Therefore, Yeatts's intentional infliction of emotion distress claim must fail because he has not plausibly pleaded the elements of extreme and outrageous conduct and intent to harm.

3. **Negligent Infliction of Emotional Distress (Count III)**

Zimmer Biomet lastly argues that Yeatts failed to plead a physical injury or impact resulting from the alleged negligence such that his negligent infliction of emotional distress claim must fail. Indiana law has been dynamic on the question of whether a plaintiff alleging negligent infliction of emotional distress must establish a physical injury to succeed on their claim. Zimmer Biomet and Yeatts have engaged this debate themselves through their briefing of the instant motion. However, the Indiana Supreme Court resolved the debate in 2006 in the case of *Atl. Coast Airlines v. Cook*, 857 N.E.2d 989 (Ind. 2006). After a thorough review of the policy and legal developments in Indiana's negligent infliction of emotional distress law, the court explicitly "reaffirm[ed] that Indiana's impact rule continues to require a plaintiff to demonstrate a direct physical impact resulting from the negligence of another" in order to recover. *Id.* at 997. The only exception to this requirement is the bystander rule, which allows recovery in situations where the plaintiff actually witnessed, or came on the scene soon after, the death or severe injury of a loved one with a relationship to the plaintiff analogous to a spouse, parent, child, grandparent, grandchild, or sibling caused by the defendant's negligent or otherwise tortious conduct. *Groves v. Taylor*, 729 N.E.2d 569, 572–73 (Ind. 2000); *see also Spangler v. Bechtel*, 958 N.E.2d 458, 466 (Ind. 2011).

Here, Yeatts makes no claim to being a bystander. He clearly seeks recovery for his own emotional distress allegedly resulting from Zimmer Biomet's publication of allegedly false information in the October 24, 2014, email. [DE 1 at 9, ¶¶ 35–36]. However, Yeatts argues that no physical impact is required to recover for negligent infliction of emotional distress based on *Schuamber v. Henderson*, 579 N.E.2d 452 (Ind. 1991) and *Blackwell v. Dykes Funeral Homes, Inc.*, 771 N.E.2d 692 (Ind. Ct. App. 2002). Yeatts's arguments are misplaced.

14

First, the Indiana Supreme Court, in its 2006 opinion in *Atl. Coast Airlines*, recognized that its decision in *Schuamber* created a modified impact rule, which talked of "direct impact" rather than the traditional "physical impact" requirement. *Atl. Coast Airlines*, 857 N.E.2d at 996. The court also recognized how *Schuamber* started a flood of cases that only confused the standard and even fostered calls to abandon the impact rule altogether. *Id.* at 996–97. However, the court refused those invitations and explicitly reaffirmed that plaintiffs must "demonstrate a direct physical impact resulting from the negligence of another" to succeed in a negligent infliction of emotional distress claim, citing policy reasons. *Id.* at 997.

Second, *Blackwell*, decided by the Indiana Court of Appeals before the Supreme Court issued its opinion in *Atl. Coast Airlines*, applied only to bystanders, not victims. In *Blackwell*, the court permitted parents to maintain an action for negligent infliction of emotional distress against a funeral home that lost their son's cremated remains. 771 N.E.2d at 697. The court held that even though the plaintiffs had not alleged any physical impact, they were "sufficiently and directly involved in the incident giving rise to the emotional trauma" to permit their claim to survive summary judgment. *Id.* Yeatts's attempt to shoehorn the alleged mental trauma he suffered himself into the bystander exception properly employed in *Blackwell* fails. Therefore, the only question remaining is whether Yeatts plausibly plead a direct physical impact as required under *Atl. Coast Airlines*. And Yeatts's complaint fails to allege any such direct physical impact.

By incorporating earlier parts of his complaint into Count III, Yeatts does allege that

> [t]he publication of defamatory material in the October 24, 2014, email damaged [his] reputation for honesty, integrity, morality, and law-abidingness; exposed [him] to harassment, public contempt, and ridicule; caused [him] to lose professional stature; impaired his employment and earning opportunities for the rest of his life; and caused [him] to suffer great pain and mental anguish.

15

[DE 1 at 8, ¶ 29]. In so doing, Yeatts has arguably alleged a direct impact between the alleged defamatory email and his mental anguish by alleging that "Zimmer Biomet published a false statement accusing [him] of corrupt and criminal activity, preventing [him] from finding alternative employment to support his family." [DE 12 at 20]. Yet these same allegations are vague as to what physical impact he suffered and how they directly flow from the email. In fact, Yeatts implicitly concedes that he has not pleaded any physical impact by his reliance on *Blackwell*'s decision allowing a negligent infliction of emotional distress claim to survive. Therefore, Yeatts has failed to state a claim for negligent infliction of emotional distress by failing to allege any direct physical impact as required under Indiana law.

### III. CONCLUSION

As discussed above, Yeatts's defamation claim (Count I) alleges sufficient facts, taken as true, from which the Court can reasonably infer the elements of false statement and actual malice necessary to state a plausible claim for relief. However, Yeatts has failed to plead plausible claims of intentional infliction of emotional distress (Count II) and negligent infliction of emotional distress (Count III) as discussed above. Therefore, the Court **GRANTS IN PART** Zimmer Biomet's motion for to dismiss as to Counts II and III and **DENIES IN PART** Zimmer Biomet's motion to dismiss as to Count I. [DE 4]. Yeatts may file an amended complaint by **May 1, 2017**. If no amended complaint is filed, Zimmer Biomet's answer to Count I of Yeatts's original complaint is due on **May 8, 2017**.

Dated this 17th day of April 2017.

s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge